IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Marlene F. Corbett,

      Plaintiff,

      v.                                    Case No. 2:06-cv-761

Francis J. Harvey,
Secretary of the Army,

      Defendant.


OPINION AND ORDER

This is an employment discrimination action filed by plaintiff Marlene F. Corbett against defendant Francis J. Harvey, Secretary of the Army.  Plaintiff is a former employee of the United States Army Corps of Engineers.  She was a navigation project assistant at the Willow Island Locks and Dam, assigned to clerical duties.  In her first amended complaint, plaintiff asserts claims of discrimination based on gender (female) and religion, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-16, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §633a, and handicap discrimination in violation of the Rehabilitation Act, 29 U.S.C. §794(a).

Plaintiff alleges in her complaint that in late 2004, she told an investigator from the Corps' Inspector General's Office that her immediate supervisor, William McMannis, seemed unconcerned with instances of employee theft and failed to discipline an employee who had threatened to kill three other employees.  Prior to this time, she had a cordial relationship with McMannis.  However, after McMannis learned about her statements, he began to harass her.

Plaintiff alleges that he subjected her to a hostile work environment by treating her with suspicion and subjecting her to closer scrutiny. She alleges that because her religious beliefs required her to tell the truth in the investigation, McMannis's harassment of her constituted religious discrimination.

Plaintiff further alleges that McMannis gave her the silent treatment, left the room to take phone calls, and tape recorded her conversations. She alleges that McMannis asked her when she was planning to retire, and she responded that she planned to work until age sixty-five. Plaintiff also alleges that in 2005, McMannis failed to give her a mid-year performance evaluation, and that he made false statements about her performance in her final performance evaluation for 2005. She alleges that McMannis treated her less favorably than male employees with respect to oversight and supervision, and in the performance evaluation process.

Plaintiff alleges that on August 16, 2005, she sought medical treatment for stress and anxiety. She filed a formal EEO complaint of discrimination on November 1, 2005, which was given the number ARCEHWV05SEP11074. In that charge, plaintiff alleged that she was subjected to a hostile work environment due to her gender and age. Plaintiff alleges that after this complaint was filed, she continued to experience harassment from her supervisor. She alleges that this hostile work environment exacerbated her disability, and that her decision to retire at the age of sixty-three on March 31, 2006, as a result of this hostile environment constituted a constructive discharge. After her retirement, plaintiff filed another EEO complaint dated April 16, 2006, which was filed under the number ARCEHWV06MAR01030. In that complaint,

2

plaintiff alleged that she was subjected to a hostile work environment in reprisal for her prior protected EEO activity, and that she was constructively discharged because of her gender and age.

Administrative hearings which including witness testimony were held on April 11, 2006, and June 27, 2006, on plaintiff's EEO complaints. In a decision dated June 22, 2006, the administrative hearing officer concluded that plaintiff was not subject to discrimination as claimed in her November complaint. By decision dated October 5, 2006, the administrative hearing officer found that plaintiff was not the victim of discrimination as claimed in her April charge.

This matter is before the court on the defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56. Since defendant does not specify in his motion why this court lacks subject matter jurisdiction over plaintiff's claims, and since the parties have submitted evidence outside the pleadings, the court will address defendant's alternative motion for summary judgment.

I. Summary Judgment Standard

The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the

3

nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).
Summary judgment will not lie if the dispute about a material fact
is genuine, "that is, if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, summary
judgment is appropriate if the opposing party fails to make a
showing sufficient to establish the existence of an element
essential to that party's case and on which that party will bear
the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S.
317, 322 (1986).  See also Matsushita Elec. Indus. Co., Ltd. v.
Zenith Radio Corp., 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty
Lobby, Celotex and Matsushita effected "a decided change in summary
judgment practice," ushering in a "new era" in summary judgments.
Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir.
1989).  The court in Street identified a number of important
principles applicable in new era summary judgment practice.  For
example, complex cases and cases involving state of mind issues are
not necessarily inappropriate for summary judgment.  Id. at 1479.
In addition, in responding to a summary judgment motion, the
nonmoving party "cannot rely on the hope that the trier of fact
will disbelieve the movant's denial of a disputed fact, but must
'present affirmative evidence in order to defeat a properly
supported motion for summary judgment.'"  Id.  (quoting Liberty
Lobby, 477 U.S. at 257).  The nonmoving party must adduce more than
a scintilla of evidence to overcome the summary judgment motion.
Id.  It is not sufficient for the nonmoving party to merely "'show
that there is some metaphysical doubt as to the material facts.'"

4

Id. (quoting Matsushita, 475 U.S. at 586). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Id. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

II. Hostile Work Environment Claim

Plaintiff claims that she was subjected to a hostile work environment due to her gender and age. To establish a prima facie case of hostile work environment, plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on gender or age; (4) the harassment had the purpose or effect of unreasonably interfering with the plaintiff's work performance or creating an intimidating, hostile or offensive work environment; and (5) the employer is vicariously liable. Clark v. United Parcel Service, Inc., 400 F.3d 341, 347 (6th Cir. 2005).

Plaintiff must show that under the totality of the circumstances, the alleged conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The sporadic use of abusive language or gender or age-related comments or jokes is not sufficient to establish liability. Clark, 400 F.3d at 354. See also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)(simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment). Factors to be considered include "the

5

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

The harassment must be ongoing, rather than a set of isolated or sporadic incidents. Clark, 400 F.3d at 351. Plaintiff must show that the working environment was both objectively and subjectively hostile. Harris, 510 U.S. at 21-22. A hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's classification. Jackson v. Quanex Corp., 191 F.3d 647, 662 (6th Cir. 1999).

Plaintiff contends that her supervisor, William McMannis, the lockmaster at Willow Island, began to harass her after she made unfavorable statements about him to an investigator from the Corps Inspector General's Office. However, plaintiff has presented no evidence that she actually made any statements to an investigator from the Inspector General's Office. Even if it is assumed that she did, and that McMannis was upset by these statements, any harassment by McMannis as a result would not be based on plaintiff's age or gender, but rather would be based on the fact that she made unfavorable statements about him.

There is also no competent evidence that McMannis or any other employee ever made comments concerning plaintiff's gender. Eldridge (James) Adkins, a lock and dam operator, testified during the administrative hearing on April 11, 2006, that McMannis allegedly made a statement to the effect that he was "going to get

6

rid of plaintiff's fat ass."[1]  McMannis denied making the statement. Damian Galish, the employee who allegedly reported the statement to Adkins, also denied hearing the statement or telling anyone about.  The only evidence concerning the comment is double hearsay and therefore not admissible in summary judgment proceedings.  See Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999).  Further, even if it is assumed that McMannis made the statement, it is not a statement indicating gender bias.  In fact, Adkins testified at the hearing on April 11th that the rumor related by Galish was that McMannis wanted to replace plaintiff with another woman.  Several employees also testified at the administrative hearing that they had never heard McMannis make gender-related comments concerning plaintiff.

As to age-related comments, plaintiff testified that McMannis asked her when she was going to retire.  McMannis testified that he asked plaintiff when she was going to retire.  However, he explained that he did so because he knew that she was close to retirement age, and he was trying to plan for future staffing needs because it took time to process the paperwork to obtain new employees.  McMannis's supervisor, Domenico Chianesi, also testified that it was common to ask this question of employees so that the managers could forecast when the staff is going to change.

_____

[1]Plaintiff has also submitted Exhibit D, a letter authored by Adkins, stating that he heard Galish say that McMannis had made statements about forcing plaintiff to retire "so he could get Sara up here at Willow Island." Adkins' affidavit authenticates the letter as being a true and accurate copy of the letter he previously submitted, but it does not authenticate the statements contained in the letter.  The failure to verify the statements precludes consideration of this evidence on summary judgment.  Lomax v. Sears, Roebuck & Co., 238 F.3d 422 (table), 2000 WL 1888715 at *5 (6th Cir. Dec. 19, 2000).

There is no evidence that McMannis constantly asked plaintiff when she was going to retire, nor is there any evidence that he asked her to retire or insisted that she retire.  Several employees, including Ann Milliron, William Foland, and Adkins, testified that they never heard McMillan say anything to plaintiff about her age, and McMillan denied making any comments about plaintiff's age.

Carl Yaney, another employee at the Willow Island locks, testified at the hearing on June 27, 2006, that McMannis made comments "several times" to other employees about plaintiff being old.  He also claimed that McMannis and David Powell, the assistant lockmaster, made comments about wanting to get a younger woman to fill plaintiff's position.  However, he did not recall the dates of the alleged comments or how often they were made, nor did he know if they ever made such comments to plaintiff.[2]  There is no evidence that any of these comments, even assuming they were made, ever came to plaintiff's attention so as to contribute to her subjective perception of a hostile work environment.

The evidence in the record is insufficient to show that any comments regarding age allegedly made by McMannis or other employees were anything more than sporadic, or that they were sufficient to result in a hostile work environment based on age. Compare Johnson v. Rumsfeld, 238 Fed.App'x 105, 107-108 (6th Cir.

---

[2]Plaintiff has also submitted Exhibit E, a letter written by Yaney, in which he accuses "management" of making comments about hiring a younger worker to replace plaintiff, and makes conclusory allegations of harassment and discrimination.  Plaintiff has also submitted an affidavit from Yaney in which he authenticates the letter as being a true and accurate copy of the letter he wrote.  However, the affidavit fails to state that the comments in the letter are true and accurate.  In any event, these general accusations are insufficient to raise a genuine issue of fact.  See Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992)(conclusory allegations and subjective beliefs are insufficient as a matter of law to establish a claim).

June 29, 2007)(alleged harassment which included employee putting retirement forms in plaintiff's basket on several occasions, and comments by another coworker that plaintiff's office was downstairs in a back room by the cafeteria because she was older insufficient to establish a hostile work environment); <u>Smith v. Leggett Wire Co.</u>, 220 F.3d 752, 760 (6th Cir. 2000)(handful of discriminatory comments, particularly by low-level employees, not sufficiently severe or pervasive to create a hostile work environment).

The evidence showed that plaintiff shared an office with McMannis and Powell. Plaintiff claimed that McMannis created a hostile work environment by micromanaging her work and monitoring her phone calls. However, McMannis testified at the April 11th hearing that as plaintiff's supervisor, it was his job to supervise plaintiff's work. He testified that he treated all employees the same way.

Gregory Keister, another employee at Willow Island, testified at the April 11th hearing that there was tension in the workplace, that McMannis liked to pit employees against each other, and that everyone had a problem with him. Richard Cisler, a lock and dam operator, also stated that McMannis had a problem with everyone and did not know how to work with his employees. Carl Yaney testified that almost everyone thought McMannis was vindictive. This testimony indicates that McMannis treated all employees alike, regardless of gender or age, and that the problem, if there was one, involved McMannis's personality and management style, not a gender-based or age-based animus on his part.

Plaintiff complains that she did not receive a mid-year evaluation in 2005, and that this was a part of the humiliation she

suffered.  McMannis testified that plaintiff did not receive a mid-year evaluation because at the time the mid-year evaluation was due, he was away in Iraq, and when he returned, he forgot to complete it.   He denied he was trying to create a hostile environment by not completing the mid-year review.  The lack of a mid-year review is insufficient to constitute harassment.

Plaintiff also claimed that McMannis frequently left the office to take phone calls, thereby making her feel as though he did not trust her or did not want her to know what was going on in the office.  McMannis testified at the June 27th hearing that he would leave the office to talk to employees on the phone about personal issues.  In light of the fact that three people shared plaintiff's office, it was not unreasonable for McMannis to leave the office for private phone conversations.

Similarly, plaintiff complained in general that McMannis would not allow other employees to visit the office, making her feel isolated. However, Adkins, another employee, testified that he saw plaintiff, on average, fourteen days a month, even though he worked outdoors as a lockman.  McMannis denied telling employees not to come into the office, although he stated he would question their being in his office if they had other duties they should be doing. Even assuming that McMannis discouraged people from congregating in the office he shared with plaintiff, that would not be unreasonable from the standpoint of McMannis being able to get his own work done without distractions.

Plaintiff also testified that she observed McMannis tape-recording their conversation on one occasion.  Plaintiff testified that the tape recorder was on McMannis's desk, and that she noticed

10

it when she went over to tell him that mail had arrived for the repair fleet. She stated that McMannis looked frustrated and red in the face, and that he tried to cover up the tape recorder, then put it in his pocket. Plaintiff stated that she had never previously seen a tape recorder on McMannis's desk. She stated that she did not know why he would be recording a conversation about the repair fleet mail, and she assumed that he was recording the conversation to humiliate her. McMannis denied owning a tape recorder or recording the conversation. However, even assuming that the incident occurred, it was an isolated event capable of multiple interpretations, and there is nothing about the incident to suggest that it was prompted by plaintiff's gender or age.

Plaintiff further claimed that she was not treated by McMannis as being part of the crew. She stated that he would hold meetings and not include her. However, there is no evidence concerning the nature of those meetings, or whether they concerned anything relevant to the performance of plaintiff's job. William Foland testified at the June 27th hearing that plaintiff stopped eating in the lunchroom. However, he stated he never heard McMannis tell plaintiff not to eat in the lunchroom. Plaintiff did not testify about whether she ate in the lunchroom, or her reasons for not doing so. Carl Yaney testified that McMillan admitted that he did not invite plaintiff to a cookout that was held at the facility. However, even assuming that this is true, this isolated incident, also subject to multiple interpretations, is insufficient to raise an inference that McMillan did not invite plaintiff due to her age or gender.

Based on the evidence in the record, a jury could not

11

reasonably find that the incidents complained of, viewed objectively and cumulatively, had the effect of creating an intimidating, hostile, or offensive work environment. In addition, the evidence does not show that the alleged harassment had the purpose or effect of unreasonably interfering with plaintiff's work performance. Plaintiff testified that even when she took sick leave, she always managed to complete her work. McMannis testified at the April 11th hearing that plaintiff was an efficient employee, and that he was pleased with her work. David Powell testified that although plaintiff's personality did not always agree with McMannis's, plaintiff did her job well. Richard Cisler also testified that plaintiff was efficient and reliable and did her job.

The evidence is insufficient to create a genuine issue of fact in regard to plaintiff's hostile work environment claim.

<u>III. Retaliation</u>

Plaintiff claims that she was retaliated against for engaging in protected conduct. To establish a prima facie case of retaliation, plaintiff must prove that: (1) she engaged in protected activity; (2) this exercise of protected rights was known to the employer; (3) the employer thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. <u>Ford v. General Motors Corp.</u>, 305 F.3d 545, 552-53 (6th Cir. 2002). Once plaintiff demonstrates a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for its action. <u>Wrenn v. Gould</u>, 808 F.2d 493, 501 (6th Cir. 1987). If the employer does so, then the burden

12

shifts back to the plaintiff to show that the articulated reason was a pretext for discrimination.

Plaintiff must show that she was subjected to an adverse job action. An adverse employment action is a "materially adverse change in the terms and conditions of employment." Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999). Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, and suspensions. Smith v. City of Salem, Ohio, 378 F.3d 566, 575-76 (6th Cir. 2004). De minimis employment actions are not actionable. Id. at 575 (events such as a bruised ego or mere inconvenience does not constitute an adverse employment action); Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000).

Plaintiff alleges that McMannis began to retaliate against her after she made statements to an investigator from the Corps' Inspector General's Office. She alleges in her complaint that in late 2004, she told an investigator from the Corps Inspector General's Office that her immediate supervisor, William McMannis, seemed unconcerned with instances of employee theft and failed to discipline an employee who had threatened to kill three other employees. No evidence has been offered that plaintiff did in fact make these statements to an investigator. However, even assuming that she did, Title VII, 42 U.S.C. §2000e-3(a) forbids retaliation against employees for attempting to protest or correct allegedly discriminatory conditions of employment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 796 (1973). Plaintiff has presented no evidence that she made any statements concerning alleged

13

discriminatory practices to the investigator.  Only statements concerning alleged discrimination would be protected conduct under Title VII.[3]  Thus, in regard to the statements described in plaintiff's complaint and any acts of retaliation allegedly stemming from them, plaintiff has not shown that she could establish the first element of her retaliation claim, that she engaged in conduct protected under Title VII.

Plaintiff filed an EEO complaint in November of 2005.  This constituted protected activity.  However, plaintiff must also show that she was thereafter subjected to an adverse employment action which was materially adverse.  Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 169 (6th Cir. 2004); Ford, 305 F.3d at 553. Plaintiff claimed in her EEO complaint dated April 16, 2006, that she was subjected to a hostile work environment in reprisal for her filing of the previous EEO complaint.  However, as previously noted, plaintiff has failed to show that she could meet the elements of a prima facie case of hostile work environment.  This is true particularly concerning the period following the filing of plaintiff's EEO complaint in November of 2005, since plaintiff left work on sick leave in December of 2005, and remained on sick leave until her retirement on March 31, 2006.  There is also no evidence that plaintiff was subjected to any other type of adverse action after filing her EEO complaint.

---

[3]Plaintiff has submitted Exhibit G, an unauthenticated memorandum stating that a male employee had filed an EEO complaint on January 28, 2003, alleging that McMannis had subjected him to a hostile work environment, but that this complaint was dismissed three days later.  The failure to authenticate this document precludes its consideration on summary judgment.  Lomax, 2000 WL 1888715 at *5.  However, even if this exhibit is considered, there is nothing in it to link the EEO complaint mentioned therein to the investigation referred to in plaintiff's complaint.

14

The evidence presented is insufficient to raise a genuine issue of material fact in regard to plaintiff's claim of retaliation.

IV. Gender and Age Discrimination

Plaintiff also claims that she was subjected to discrimination on the basis of her gender and age because she was treated differently than male or younger employees.  A claim of age or gender discrimination may be proved either by direct evidence of discrimination or by establishing a prima facie case under the burden-shifting analysis in McDonnell Douglas v. Green.  Minadeo v. ICI Paints, 398 F.3d 751, 763 (6th Cir. 2005)(age discrimination); Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d 506, 514 (6th Cir. 2003)(Title VII).  No direct evidence of discrimination has been produced in this case.

To establish a prima facie case of disparate treatment based on age or gender, plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) similarly-situated non-protected or substantially younger employees were treated more favorably.  Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 511 (6th Cir. 2004)(age discrimination); Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002)(Title VII).  If plaintiff establishes a prima facie case, the burden shifts to the employer to show that it had a legitimate, nondiscriminatory reason for its action.  Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003); Anthony, 339 F.3d at 514-15.  If the employer articulates such a reason, plaintiff must show that the articulated reason was merely a pretext for discrimination.  Grosjean, 349 F.3d

15

at 335; <u>Anthony</u>, 339 F.3d at 514-15.

The evidence shows that plaintiff is a member of a protected class by virtue of her gender and age, and that she was qualified for the position she held. However, the evidence fails to show that she sustained an adverse job action. Plaintiff testified generally that McMannis subjected her to close supervision and monitored her phone calls. However, this is not sufficient to constitute an adverse job action. <u>See</u> <u>Birch</u>, 392 F.3d at 169 (increased scrutiny of work not tantamount to adverse employment action); <u>Allen v. Mich. Dep't of Corrections</u>, 165 F.3d 405, 410 (6th Cir. 1999)(supervisors' alleged action of monitoring plaintiff more closely than non-minority employees not adverse employment action). The fact that McMannis left the office to talk on the phone also did not constitute an adverse job action.

Plaintiff contends that her 2005 performance evaluation was the product of discrimination. Plaintiff had previously received ratings of "excellence," or exceeding the standard, with a total rating of one. In the 2005 evaluation, she received a rating of "excellence" in technical competence, and a rating of "success," or one level down, in adaptability and initiative, working relationships and communications, and responsibility and dependability, resulting in a total rating of two. Chianesi, plaintiff's second level supervisor, described this as being a good rating. Even McMannis noted on the evaluation form that plaintiff was "exceptional at running office" and that she "has outstanding grasp of administrative duties[.]"

Negative evaluations, taken alone, cannot constitute a basis for a discrimination claim. <u>Morris v. Oldham County Fiscal Court</u>,

16

201 F.3d 784, 789 (6th Cir. 2000); <u>Primes v. Reno</u>, 190 F.3d 765, 767 (6th Cir. 1999). To constitute an adverse job action, the evaluation must have an adverse impact on the plaintiff. <u>Parrish v. Ford Motor Co.</u>, 909 F.2d 1484 (table), 1990 WL 109188 (6th Cir. Aug. 2, 1990). In this case, there is no evidence that the plaintiff's 2005 performance evaluation, which her supervisors considered to be a good rating, had any impact on any of the terms or conditions of her employment. The performance evaluation does not constitute an adverse job action for purposes of establishing her prima facie case.[4] There is also no evidence in the record that any similarly-situated male or younger employees were treated more favorably in their evaluations for similar work performance.

Plaintiff claims that the failure to give her a mid-year review was discriminatory. However, plaintiff has offered no evidence that she suffered any adverse consequences as a result of this failure to give her a mid-year review. In addition, McMannis testified at the April 11th hearing that thirteen out of sixteen employees received a mid-year review. Since there were only two female employees at Willow Island, this means that at least one

---

[4]The evidence also includes McMannis's nondiscriminatory reasons for plaintiff's performance rating. McMannis noted that plaintiff's use of sick leave had gone up (plaintiff had used two hundred-sixty to two hundred-seventy hours of sick leave). McMannis felt that this was excessive because other employees had to perform her duties, such as answering the phone, when she was gone. However, there is no evidence that plaintiff's use of sick leave resulted in any discipline being imposed, and plaintiff exhausted her accumulated sick leave before she retired. McMannis also noted on the form that he would like to see an improvement in plaintiff's attitude towards coworkers. McMannis testified that he was concerned that plaintiff was repeating confidential office conversations with other employees. Plaintiff disagreed with this assessment by writing on the form, "<u>This is blatant Bullshit</u>! I'm tired of the <u>lies by all</u>!" However, plaintiff's own subjective belief concerning the quality of her work is not sufficient to create a genuine issue regarding the honesty of her supervisor's assessment of her performance. <u>Fortier v. Ameritech Mobile Communications, Inc.</u>, 161 F.3d 1106, 1114 (7th Cir. 1998).

male employee did not receive a mid-year review.  The failure to give plaintiff a mid-year review is not sufficient to constitute an adverse job action.  In addition, McMannis testified that he was in Iraq when plaintiff's mid-year review was due, and he simply forgot to complete it when he returned.  He testified that his failure to complete the review was not due to plaintiff's age or sex.  David Powell, who would have been plaintiff's supervisor while McMannis was in Iraq, testified that it was his understanding that a mid-year review was not required unless the employee's performance to that point was not satisfactory, and plaintiff's performance did not fall in that category.

Plaintiff has failed to show that she could establish a prima facie case of disparate treatment based on gender or age.

V. Religious Discrimination

Plaintiff alleges in her complaint that when she spoke with the investigator from the Inspector General's Office, she told the truth because being truthful is one of the requirements of her religious beliefs.  She alleges that McMannis discriminated against her on the basis of her religion by retaliating against her for telling the truth to the inspector.  However, as previously noted, there is no evidence in the record that plaintiff actually made any statements, truthful or otherwise, to the investigator.  The record does not show that plaintiff filed an EEO charge of religious discrimination, and the testimony at the administrative hearings did not address this claim.

Assuming arguendo that plaintiff did in fact make statements to the investigator as alleged in her complaint, to establish a prima facie case of disparate treatment based on religion under the

18

<u>McDonnell Douglas</u> framework, plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) similarly-situated non-protected or substantially younger employees were treated more favorably.  <u>Tepper v. Potter</u>, 505 F.3d 508, 515 (6th Cir. 2007).

Religious beliefs fall within a protected class, and plaintiff was qualified for her position.  However, as noted previously, the evidence fails to show that she was subjected to an adverse employment action or a hostile work environment, or to raise a genuine issue of fact in that regard.  Therefore, no genuine issue of fact has been shown to exist in regard to plaintiff's claim of religious discrimination.

<u>VI. Rehabilitation Act Claim</u>

The Rehabilitation Act constitutes the exclusive remedy for a federal employee alleging disability-based discrimination.  <u>Peltier v. United States</u>, 388 F.3d 984, 989 (6th Cir. 2004).  However, in the Sixth Circuit, the standard applied to claims under the Rehabilitation Act and the Americans with Disabilities Act ("ADA") is the same.  <u>Macy v. Hopkins County Sch. Bd. of Educ.</u>, 484 F.3d 357, 363 n. 2 (6th Cir. 2007).

In the absence of direct evidence of discrimination, the three-step burden-shifting framework articulated in <u>McDonnell Douglas Corp.</u> applies.  <u>Jones v. Potter</u>, 488 F.3d 397, 403-04 (6th Cir. 2007).  To establish a prima facie case under the Rehabilitation Act, plaintiff must prove that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable

accommodation; (3) she suffered an adverse employment action; (4) her employer knew or had reason to know of her disability; and (5) following the adverse employment action, either she was replaced by a non-disabled person, her position remained open, or other similarly situated non-protected employees were treated more favorably. Id. at 404. If plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. Id. If the employer meets this burden, then the burden shifts to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination. Id.

A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2)(A). The inability to perform a particular job does not constitute a substantial limitation; rather, the impairment must significantly restrict an individual's ability to perform a broad class of jobs. Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999); Jasany v. United States Postal Service, 755 F.2d 1244, 1250 (6th Cir. 1985).

The "otherwise qualified" inquiry looks to the employee's ability to perform the job's essential function, as well as whether a reasonable accommodation by the employer would enable the handicapped person to perform those functions. Hall v. United States Postal Service, 857 F.2d 1073, 1078 (6th Cir. 1988). Plaintiff must show that her supervisors actually knew of her disability, that she requested an accommodation, and that the defendant failed to provide a reasonable accommodation. Gaines v.

Runyon, 107 F.3d 1171, 1175 (6th Cir. 1997).

Plaintiff has failed to produce evidence sufficient to show that she could prove the elements of a prima facie case of disability discrimination. There is no evidence from which a jury could find that plaintiff is an individual with a disability. Plaintiff claims that she was suffering from a mental disability, namely, stress caused by working under McMannis in a hostile environment. Plaintiff testified at the June 27, 2006, administrative hearing that she left the office on sick leave due to stress in December of 2005, and retired on March 31, 2006, after exhausting her sick leave. Plaintiff has submitted no evidence from her treating mental health counselor concerning the nature of her condition. There is no evidence establishing that at the time of her retirement, plaintiff was unable to perform a class of jobs or a broad range of jobs in various classes. See Cartwright v. Lockheed Martin Utility Services, Inc., 40 Fed.App'x 147, 154 (6th Cir. July 3, 2002)(where plaintiff took disability leave because of stress of working with his supervisors, but offered no evidence that he could not perform either a class of jobs or a broad range of jobs, plaintiff failed to show that he was significantly limited in the life activity of working).

Plaintiff has also produced no evidence showing that her employer was aware that she had a qualifying disability, or that she requested any reasonable accommodation for that disability, which was then denied. She has submitted a letter dated April 17, 2006, from Leigh S. Huggins, a counselor at Tri-County Help Center, which states that Ms. Huggins had not been contacted by anyone at Willow Island Locks and Dam or the Huntington District Office

21

regarding what could be done to alleviate the hostile work environment, or to enquire when plaintiff could return to work. Plaintiff has also submitted an affidavit from Ms. Huggins stating that she treated plaintiff, and that the letter was a true and accurate copy of the letter she prepared for plaintiff. However, the affidavit does not state that the statements in the letter were true and correct. Thus, the letter is not admissible in summary judgment proceedings.

However, even considering the statements in the letter, it is plaintiff's obligation to show that her supervisors actually knew of her disability, that she requested an accommodation, and that the employer failed to provide a reasonable accommodation. Gaines, 107 F.3d at 1175. See also Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 (5th Cir. 1999)(noting that "the responsibility for the interactive process is shared" and holding that an employer cannot be found to have violated the ADA when responsibility for the breakdown in the informal interactive process regarding accommodations is traceable to the employee and not the employer); Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996)(failure to accommodate not established where employee failed to provide medical information necessary to the understanding of her condition). The statements in the letter do not establish that plaintiff or her counselor notified plaintiff's employer that she had a qualifying disability and was requesting accommodation.

Plaintiff has failed to show that she could prove a prima facie case of disability discrimination under the Rehabilitation Act.

VII. Constructive Discharge

Plaintiff claims that her retirement on March 31, 2006, constituted a constructive discharge. Constructive discharge is not itself a cause of action, but rather a means of proving the element of an adverse employment action where the employee resigns instead of being fired. Logan v. Denny's Inc., 259 F.3d 558, 568 (6th Cir. 2001)(plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged); Starks v. New Par, No. 98-1300, 1999 WL 357757 at *5 (6th Cir. May 11, 1999)(constructive discharge not a cause of action); Kroll v. Disney Store, Inc., 899 F.Supp. 344, 347 (E.D.Mich. 1995)(constructive discharge is not an independent claim, but rather requires an underlying cause of action for employment discrimination).

Proof of discrimination alone is not sufficient to show a constructive discharge. Yates v. Avco Corp., 819 F.2d 630, 637 (6th Cir. 1987). See also Pennsylvania State Police v. Suders, 542 U.S. 129, 146-47 (2004)(proof of hostile work environment alone not sufficient); Moore v. KUKA Welding Systems & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999)(proof of hostile work environment in violation of Title VII not enough by itself to prove constructive discharge).

Employee resignations are presumed to be voluntary. Leheny v. City of Pittsburgh, 183 F.3d 220, 227 (3d Cir. 1999). A plaintiff claiming constructive discharge must prove that there were other aggravating factors. Yates, 819 F.2d at 637. "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable

23

person, with the intention of forcing the employee to quit and the employee must actually quit." <u>Moore</u>, 171 F.3d at 1080.

The constructive discharge two-pronged analysis requires an objective assessment of the employee's feelings and an inquiry into the employer's intent and the foreseeability of the impact its conduct had on the employee. <u>Peters v. Lincoln Elec. Co.</u>, 285 F.3d 456, 478 (6th Cir. 2002). The first prong is an objective inquiry which focuses on whether "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." <u>Smith v. Henderson</u>, 376 F.3d 529, 553-54 (6th Cir. 2004). The second prong, the "employer" inquiry, focuses on whether the employer intended that the work environment cause the employee to resign. <u>Yates</u>, 819 F.2d at 637.

Conditions supporting a constructive discharge must be objectively intolerable to a reasonable person. <u>Policastro v. Northwest Airlines, Inc.</u>, 297 F.3d 535, 539 (6th Cir. 2002). An employee's belief that he was compelled to resign must be judged "without consideration of his undue sensitivities." <u>Wilson v. Firestone Tire & Rubber Co.</u>, 932 F.2d 510, 515 (6th Cir. 1991). Complaints about the manner in which the employer supervised or criticized an employee's job performance and assigned job duties are normally insufficient to establish a constructive discharge. <u>Smith</u>, 376 F.3d at 534; <u>Peters</u>, 285 F.3d at 479 (hurt feelings and general suspicion based on conjecture that employer was targeting older employees for termination insufficient to establish constructive discharge); <u>Perry v. Harris Chernin, Inc.</u>, 126 F.3d 1010, 1015 (7th Cir. 1997)("[U]nless conditions are beyond

'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress."); Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.").

The evidence in the record is insufficient to establish that plaintiff's working conditions were so difficult or unpleasant that a reasonable person in plaintiff's position would have felt compelled to resign. As noted previously, based on the evidence in the record, a jury could not reasonably find that plaintiff has satisfied her burden of establishing a prima facie case on her claims of discrimination, hostile work environment, or retaliation, and no genuine issues of material fact have been shown to exist in regard to those claims. Since the circumstances are insufficient to establish the existence of a hostile work environment, "the claim necessarily fails to show working conditions so intolerable that a reasonable person would feel compelled to resign." Johnson, 238 Fed.App'x at 109. Likewise, the evidence of plaintiff's working conditions fails to give rise to a reasonable inference that plaintiff's employer intended that the work environment cause the employee to resign. Finally, plaintiff had filed an EEO complaint which was pending at the time of her retirement, and was in the process of preparing another EEO complaint. Thus, retirement was not plaintiff's only alternative to address her concerns about alleged discrimination.

The record fails to demonstrate the existence of a genuine issue of material fact in regard to constructive discharge.

VIII. Conclusion

In accordance with the foregoing, the court finds that no genuine issue of material fact has been shown to exist in regard to plaintiff's claims, and that defendant is entitled to summary judgment. Defendant's motion for summary judgment (Doc. No. 15) is granted, and the clerk shall enter judgment in favor of defendant.


Date: March 17, 2008            _____s\James L. Graham_____
                                James L. Graham
                                United States District Judge

26